# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAYIS NAZARYAN,<br><br>                Petitioner,<br><br>    v.<br><br>PAM BONDI, Attorney General of the United States; KRISTI NOEM, Secretary of the U.S. Department of Homeland Security; WARDEN, ADELANTO ICE PROCESSING CENTER-DESERT VIEW FACILITY; and PATRICIA M. COLBERT, Field Office Director of the Los Angeles Field Office, U.S. Immigration and Customs Enforcement,<br><br>                Respondents. | Case No. 5:26-cv-00913-SPG-DTB<br><br>**ORDER DENYING EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER [ECF NO. 2]** |

Before the Court is the Ex Parte Application for Temporary Restraining Order, (ECF No. 2 ("Application")) filed by Petitioner Mayis Nazaryan ("Petitioner"). The Court has read and considered the Application and Petition and concluded that the matter is suitable for decision without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. Having considered the parties' submissions, the relevant law, and the record in this case, the Court DENIES the Application without prejudice.

## I. BACKGROUND

The allegations described below are taken from Petitioner's Application and Petition for Writ of Habeas Corpus, (ECF No. 1 ("Petition")), and are undisputed unless otherwise indicated.[1]

Petitioner is an Armenian citizen currently detained at the Adelanto Immigration Customs and Enforcement ("ICE") Processing Center – Desert View Facility. (Pet. at 2). In both the Petition and Application, Petitioner seeks immediate release from immigration custody or, in the alternative, a bond hearing before a neutral Immigration Judge within seven (7) days. (*Id.* at 6); (App. at 6). As Respondents, Petitioner names Pam Bondi, Attorney General of the United States; Kristi Noem, Secretary of the U.S. Department of Homeland Security; Warden, Adelanto ICE Processing Center – Desert View Facility; and Patricia M. Colbert, Field Director of the Los Angeles Field Office, U.S. Immigration and Customs Enforcement. *See* (Pet.).

### A. Factual Background

Petitioner entered the United States on December 5, 2023, near San Ysidro, California. (*Id.* at 4). Upon arrival, the Department of Homeland Security ("DHS") classified him as an "arriving alien," commenced removal proceedings pursuant to Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"), issued Petitioner a Notice to Appear on July 10, 2024, and released him from custody. (*Id.* at 4, 9, 12). According to Petitioner, sometime after his release, Petitioner obtained an

---

[1] The Petition and Application include as part of the filed documents sensitive and private information as attached exhibits. *See* (Pet.); (App.). This sensitive and private information in the exhibits have not been properly redacted, as required by Federal Rule of Civil Procedure 5.2 and Central District of California Local Rule 5.2-1. Therefore, the Court ORDERS the Petition and Application sealed on the docket. *See* Fed. R. Civ. P. 5.2(d) ("The court may order that a filing be made under seal without redaction."). If Petitioner intends to proceed with the action, Petitioner shall file an amended petition and any supporting materials within seven (7) calendar days that properly redacts any sensitive and private information appearing therein in accordance with Fed. R. Civ. P. 5.2 and Local Rule 5.2-1.

Employment Authorization Document, which authorizes Petitioner to work in the United States for a certain time period.[2] (*Id.* at 2). Petitioner represents that, since his arrival in the United States, he has "lived peacefully in California," "obtained lawful work authorization," and "maintained steady employment as an auto body technician." (*Id.* at 4).

In December of 2025, ICE arrested Petitioner "following an encounter related solely to an expired driver's license." (*Id.*). He was then transferred to and detained at Adelanto ICE Processing center. (*Id.*). Petitioner represents that he has not been provided a bond hearing, and no final order of removal has been executed against him. (*Id.*).

Petitioner also represents that he suffers from a "life-threatening neurological condition." (*Id.*). The Application describes Petitioner's serious medical diagnoses, medication, and some of the medical procedures performed on him before being detained. (App. at 3). Petitioner has also attached as exhibits to the Application certain medical records setting forth his serious medical diagnoses. *See* (*id.* at 15–27). Petitioner's counsel attests that Petitioner has been prescribed anti-seizure medication and, based on communications with Petitioner's family, "Petitioner has been experiencing seizures on a near-daily basis while detained at Adelanto." (*Id.* at 2). Petitioner contends that his continued detention "places him at risk of physical collapse, head trauma, and permanent neurological injury." (Pet. at 5).

B. **Procedural History**

Petitioner filed the Petition on February 25, 2026, (*id.*), and the Application on February 27, 2026, (App.), seeking relief under *Zadvydas v. Davis*, 533 U.S. 678 (2001), and the Fifth Amendment of the Constitution. Upon review of the Petition and Application, the Court set a hearing and briefing schedule on an expedited basis. (ECF No. 5). Respondents filed an Opposition on March 3, 2026. (ECF No. 6 ("Opp.")). Petitioner did not file a Reply.

---

[2] Neither the Petition nor the Application explain the circumstances under which Petitioner obtained the Employment Authorization Document. Nor do they attach the document in support of the Application or Petition.

## II.     LEGAL STANDARD

A temporary restraining order is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The standard for issuing a temporary restraining order is essentially the same as that for issuing a preliminary injunction. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) ("[T]he legal standards applicable to TROs and preliminary injunctions are substantially identical." (internal quotation marks and citation omitted)). A plaintiff may secure a temporary restraining order upon establishing that: (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *See Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012) (citing *Winter*, 555 U.S. at 20).

"[S]erious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotation marks omitted). "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Winter*, 555 U.S. at 24 (quoting *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987)). "'In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'" *Id.* (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

The court is permitted to consider the parties' pleadings, declarations, affidavits, and exhibits submitted when deciding an application for a temporary restraining order. *See Earth Island Inst. v. Nash*, No. 1:19-cv-01420-DAD-SAB, 2020 WL 1936701, at *6 (E.D. Cal. Apr. 21, 2020) ("[I]n considering a motion for preliminary injunction, a court may consider and rely upon declarations, affidavits, and exhibits submitted by the parties."

(citations omitted)); *Harper v. Poway Unified Sch. Dist.*, 345 F. Supp. 2d 1096, 1119–20 (S.D. Cal. 2004) (considering declarations submitted by defendants to deny plaintiff's request for a preliminary injunction). "The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984). The urgency of the relief sought necessitates a prompt determination and can make it difficult to obtain admissible evidence. *See id.*

### III. DISCUSSION

Petitioner argues that he is detained pursuant to 8 U.S.C. § 1226(a), in violation of the Fifth Amendment's Due Process Clause, as interpreted by *Zadvydas*, 533 U.S. at 678, such that he is entitled to immediate release or a bond hearing pursuant to 8 C.F.R. §§ 1003.19, 1236.1. *See* (App. at 4). Respondents oppose, arguing that Petitioner is detained pursuant to 8 U.S.C. § 1225(b) as an applicant for admission and not entitled to either requested relief. (Opp. at 4).

#### A. Likelihood of Success on the Merits

The Court concludes that Petitioner has not established a likelihood of success on the merits of his due process claim because, based on the record currently presented before the Court, which includes a Notice to Appear listing Petitioner as an "arriving alien," Petitioner has not shown that he is being detained pursuant to 8 U.S.C. § 1226(a).

Petitioner's entitlement to a bond hearing is dependent on whether Petitioner is an "arriving alien" detained pursuant to 8 U.S.C. §§ 1225(b) or 1226(a). Federal regulations define an "arriving alien" as "an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport." 8 C.F.R. § 1001.1(q). Section 1225(a)(1) also provides that an individual is treated as an applicant for admission if he "has not been admitted or who arrives in the United States (whether or not at a designated port of arrival

and including an alien who is brought to the United States after having been interdicted in international or United States waters)." 8 U.S.C. § 1225(a)(1).

When noncitizens present themselves for inspection at a point of entry, an immigration officer must determine if the applicant may be admitted into the country. *See Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Section 1225(b) sets forth two categories for admittance, and the paradigm for detention flows from each category. *Id.* Section 1225(b)(1) applies to noncitizens "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Id.* Those initially determined to be inadmissible are "order[ed] removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum . . . or a fear of prosecution." 8 U.S.C. § 1225(b)(1)(A)(i). Applicants who express a fear of prosecution or intend to apply for asylum are referred to an immigration officer for an asylum interview and, upon a finding that the applicant indeed faces a credible fear of persecution, "the alien shall be detained for further consideration of the application for asylum." *Id.* § 1225(b)(1)(B)(ii). In comparison, § 1225(b)(2) establishes a "broader," "catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)," subject to certain exceptions. *Jennings*, 583 U.S. at 287. Applicants subject to § 1225(b)(2) "shall be detained for a [removal] proceeding" if an immigration officer "determines that [they are] not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). "Regardless of which of those two sections authorizes their detention, applicants for admission may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit.'" *Jennings*, 583 U.S. at 288 (quoting *id.* § 1182(d)(5)(A)). With the exception of temporary release on parole, detention under § 1225(b) is mandatory until conclusion of the removal proceedings, and arriving aliens are not entitled to a bond hearing. *See id.* at 297 ("[N]either § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.").

While § 1225(b) addresses the inspection process for "arriving alien[s]" or "applicants for admission," § 1226(a) governs the arrest and detention proceedings for

certain noncitizens "already in the country," but awaiting a decision on removal. *Id.* at 289; 8 U.S.C. § 1226(a). Before a final order of removal is issued, the Attorney General "may continue to detain the arrested alien," or "may release the alien" on bond or conditional parole, but "may not provide the alien with work authorization (including an "employment authorized" endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization." 8 U.S.C. §§ 1226(a)(1)–(3). Those detained under § 1226(a) are entitled to seek a bond hearing before an immigration judge. 8 C.F.R. § 236.1(d)(1); *see Jennings*, 583 U.S. at 306 ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention.").

Based on the plain language of §§ 1225(b), 1226(a), and applicable regulations, as well as the record presented, Petitioner has not shown that he falls within § 1226(a). To the contrary. The Notice to Appear, submitted by Petitioner, indicates that Petitioner was designated as "an arriving alien," that he "applied for admission on 12/05/2023 at SAN YSIDRO, CA," and that he is "an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act." (Pet. at 9). The evaluating agent charged Petitioner as "subject to removal" pursuant to section 212(a)(7)(A)(i)(I) of the INA, as enacted 8 U.S.C. § 1182(7)(A)(i)(I). (*Id.* at 12). This section provides that "any immigrant at the time of application for admission who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required under the regulations issued by the Attorney General under section 1181(a) of this title . . . is inadmissible." 8 U.S.C. § 1182(7)(A)(i)(I). Petitioner was then ordered to appear before an immigration judge on June 10, 2024, "to show why [he] should not be removed from the United States." (Pet. at 9).

Petitioner has not provided any additional information or documentation regarding what transpired following issuance of the Notice to Appear, or other information regarding his removal proceedings until he was detained in December of 2025. Nor has he presented evidence of his Employment Authorization Document or other documentation to support his contention that he is detained under § 1226(a), as a noncitizen awaiting a removal decision, rather than as an arriving alien under § 1225(b), as stated in his Notice to Appear. *See* (*id.* at 9, 12). Thus, because he was classified as an "arriving alien" during his initial inspection, and was found inadmissible for lack of valid documentation, the Court finds, in the absence of any other evidence showing otherwise, that Petitioner is detained under § 1225(b). *Compare* (*id.*) *with Cordero Pelico v. Kaiser*, No. 25-cv-07286-EMC, 2025 WL 2822876, at *11 (N.D. Cal. Oct. 3, 2025) (finding that petitioners were detained under § 1226(a), not § 1225(b), in part because petitioners were classified as "an alien present in the United States who has not been admitted or paroled," and not as "an arriving alien"); *Ortiz Donis v. Chestnut*, No. 1:25-cv-01228-JLT-SAB, 2025 WL 2879514, at *1, *8 (E.D. Cal. Oct. 9, 2025) (same); *Cotoc Yac De Yac v. Hermosillo*, No. 2:25-cv-02593-DGE-TLF, 2026 WL 124334, at *3 (W.D. Wash. Jan. 16, 2026) ("Petitioner's 2021 Notice to Appear further indicates she was not seeking admission under § 1225. Notably, the issuing officer explicitly declined to designate Petitioner as an 'arriving alien,' which is the active language used to define the scope of § 1225(b)(2)(a) in its implementing regulation."); *Pop v. Noem*, No. 5:25-cv-02589-SSS-SSC, 2025 WL 3050095, at *5 (C.D. Cal. Oct. 3, 2025) (finding that petitioners were not detained under § 1225, in part, because "on each Notice to Appear, DHS identified each Petitioner as 'an alien present in the United States who has not been admitted or paroled,' not as 'an arriving alien.'").

The Court finds that Petitioner has not met his burden to show that he is detained pursuant to § 1226(a), and thus, based on the record before the Court, he has not satisfied his burden of showing he is likely to succeed on the merits of his Due Process Claim. The Court therefore declines to reach the remaining *Winter* factors. *See California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018) ("Likelihood of success on the merits is the most important

factor; if a movant fails to meet this threshold inquiry, we need not consider the other factors.") (internal quotation marks and citation omitted).

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES the Application without prejudice to refiling.

**IT IS SO ORDERED.**

DATED:  March 5, 2026

UNITED STATES DISTRICT JUDGE